UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STERILITE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:22-cv-10327-JEK |
| OLIVET INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER ON MOTIONS IN LIMINE

**KOBICK, J.**

Plaintiff Sterilite Corporation, which manufactures plastic houseware products, filed this trade dress case against defendant Olivet International, Inc., which distributes plastic consumer goods. Sterilite's claims for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); dilution pursuant to M.G.L. c. 110H, § 13; and common law unfair competition survived summary judgment with respect to its cabinets and drawers but not as to its wastebasket lids. Sterilite's claim for tortious interference with business relationships also survived. Pending before the Court are Sterilite's seven motions in limine and Olivet's six motions in limine. For the reasons that follow, Sterilite's second, fourth, and seventh motions will be granted; its first and third motion will be granted in part and denied in part; its fifth motion will be denied; and its sixth motion will be denied without prejudice to its renewal at trial. Olivet's sixth motion will be granted; its first and fifth motions will be granted in part and denied in part; its second and fourth motions will be denied; and its third motion will be denied in part and denied in part without prejudice to its renewal at trial.

**STERILITE'S MOTIONS IN LIMINE**

**I.      Motion in Limine No. 1: Unregistered Trade Dress.**

Sterilite's first motion in limine seeks to preclude argument or evidence that it was required to register, should have registered, and failed to register its trade dress. That motion will be granted in part and denied in part. Olivet concedes that Sterilite was not required to register its trade dress but argues that it should have done so if it "wanted maximal protection." ECF 166, at 2. True, under the Lanham Act, if "the trade dress is federally registered, that registration 'shall be prima facie evidence of the validity of the registered mark and of the registration of the mark.'" *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, 52 F.4th 1363, 1368 (Fed. Cir. 2022) (quoting 15 U.S.C. § 1057(b)). And "[w]hen the mark has been registered for fewer than five years and remains contestable, . . . 'the effect of registration . . . is to shift the burden of proof from the plaintiff to the defendant, who must introduce sufficient evidence to rebut the presumption of the plaintiff's right to exclusive use.'" *Id.* (quoting *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006)). The Lanham Act also provides protection, however, to "trade dress not registered on the principal register." 15 U.S.C. § 1125(a)(3); *see Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210, 216 (2000). Olivet will thus be precluded from arguing that Sterilite was *required to* register or *should have* registered its trade dress. ECF 115, ¶ 2.

Olivet will be permitted, however, to argue that Sterilite *failed to* register its trade dress. The fact that Sterilite could have registered its trade dress and did not do so may be relevant. For example, as Olivet posits, Sterilite may have decided to forgo registration due to concerns about the functionality of its trade dress or the lack of secondary meaning. *See* ECF 166, at 3. Olivet can therefore elicit testimony or present evidence establishing that Sterilite's trade dress was not registered and explaining why Sterilite did not register its trade dress.

II.     **Motion in Limine No. 2: Individual Functional Elements.**

Sterilite's second motion in limine seeks to preclude argument or evidence that its overall trade dress is functional simply because its individual trade dress elements have a functional purpose. That motion will be granted. This Court has repeatedly explained that under established First Circuit precedent, "the 'fact that a product contains some functional elements does not . . . preclude Lanham Act protection,' because a 'particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection.'" ECF 137, at 24 (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 37 (1st Cir. 1998)); *see* ECF 22. Indeed, the Court excluded testimony from Olivet's industrial design expert, Paul Hatch, about the functionality of Sterilite's overall trade dress because "he considered the trade dress elements in isolation, but did not also examine the design as a whole." ECF 137, at 24. However, because the jury will ultimately decide whether the design of Sterilite's cabinets and drawers is non-functional, Olivet is not prohibited from arguing or introducing evidence that those products lack an arbitrary pattern of functional elements.

III.    **Motion in Limine No. 3: Survey Evidence.**

Sterilite's third motion in limine seeks to preclude argument or evidence that its decision not to present survey evidence is dispositive or permits an adverse inference. That motion will be granted in part and denied in part. As the Court explained at summary judgment, "[d]irect evidence of secondary meaning—typically in the form of 'consumer surveys and testimony by individual consumers'—is valuable, but not required." ECF 137, at 33 (quoting *Yankee Candle Co. Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 43 (1st Cir. 2001)). Olivet concedes that "it cannot argue that Sterilite was required to present survey evidence" or that "its survey evidence supersedes all other evidence." ECF 166, at 5. Thus, Sterilite's motion is granted insofar as Olivet will be

precluded from arguing or implying that "(1) Sterilite should have presented survey evidence; (2) Sterilite cannot demonstrate that the Sterilite Trade Dress has acquired secondary meaning because Sterilite 'failed' to present survey evidence; [and] (3) Sterilite cannot show likelihood of confusion because it 'failed' to present survey evidence." ECF 158, at 4-5. The motion is denied, however, to the extent Sterilite seeks to preclude evidence that "the reason Sterilite did not put forward survey evidence is because it knew such evidence would be unfavorable to it." *Id.* at 5. To the extent it is not privileged, the reason why Sterilite did not offer survey evidence may be relevant, even if such evidence is not required to establish secondary meaning or likelihood of confusion. Ultimately, the jury instructions will properly explain how to weigh Olivet's direct survey evidence against Sterilite's circumstantial evidence. *See id.* at 6; ECF 146; *Yankee Candle*, 259 F.3d at 39, 43-44 (discussing circumstantial evidence and describing survey evidence as "the 'preferred' manner of demonstrating secondary meaning" (citation omitted)).

**IV.     Motion in Limine No. 4: Suing Walmart.**

Sterilite's fourth motion in limine seeks to preclude argument or evidence that it should have sued Walmart. That motion will be granted. The fact that Walmart is not a defendant in this case is, as Sterilite argues, irrelevant to either party's claims or defenses. Olivet does not contest this point and instead contends that such preclusion would be unfairly prejudicial under Federal Rule of Evidence 403 because the jury might wonder why Walmart is not a defendant and, in turn, assume that Olivet bears full responsibility. But Olivet *does* bear responsibility for its own conduct, and the jury will determine whether that conduct amounts to trade dress infringement, dilution, unfair competition, or tortious interference. Precluding evidence or argument that Sterilite should have sued Walmart is, accordingly, warranted. *See UMG Recordings, Inc. v. Escape Media Grp., Inc.*, No. 11-cv-8407-TPG, 2015 WL 1873098, at *6 (S.D.N.Y. Apr. 23, 2015) ("grant[ing]

4

plaintiffs' motion to preclude evidence or argument concerning plaintiffs' failure to sue other infringers"); *Paone v. Microsoft Corp.*, No. 07-cv-2973-ADS, 2013 WL 4048503, at *5 (E.D.N.Y. Aug. 9, 2013) (precluding "argument, evidence, and/or testimony concerning [plaintiff's] lack of suit against other TKIP technologies").

## V.     Motion in Limine No. 5: Overall Finances.

Sterilite's fifth motion in limine seeks to preclude argument or evidence regarding the parties' overall financial valuations, revenues, or profits. That motion will be denied. Sterilite argues that such evidence has no bearing on any claim or defense. But this evidence is relevant. "Secondary meaning may . . . be proven through circumstantial evidence," including "the nature and extent of advertising and promotion of the trade dress." *Yankee Candle*, 259 F.3d at 43. At summary judgment, Sterilite provided evidence of its total advertising figures since 2011. ECF 115, ¶ 86; *see* ECF 137, at 3, 38 (citing *id.*). Because Sterilite will likely seek to introduce similar evidence at trial, Olivet should have the opportunity to place those figures into context by exploring the percentage of Sterilite's advertising devoted to the products at issue, and the percentage of Sterilite's overall revenue attributable to those products. Experts may also testify at trial that damages should be allocated as a percentage of overall revenue where certain expenses are likewise not tracked on a product level. This motion will thus be denied.

## VI.    Motion in Limine No. 6: Pretrial Proceedings.

Sterilite's sixth motion in limine seeks to preclude argument or evidence regarding pretrial proceedings. That motion will be denied without prejudice. Sterilite contends that such evidence is irrelevant and risks unfair prejudice and misleading the jury, which could conclude, for example, that Sterilite's surviving claims lack merit because certain of its claims as to its wastebasket lids were dismissed at summary judgment. Courts generally preclude testimony at trial about

previously dismissed claims. *See Maine v. Becerra*, No. 23-1521, 2024 WL 3949261, at *3 (4th Cir. Aug. 27, 2024) (affirming preclusion of dismissed claims at trial on relevance grounds); *Doe v. Sanderson*, No. 16-cv-12068-IT, 2021 WL 2593776, at *1 (D. Mass. June 24, 2021) (excluding testimony regarding dismissed claims on relevance and risk of confusion grounds). Appropriately, Olivet has agreed not to argue at trial about Sterilite's Chapter 93A claim, which Sterilite withdrew. ECF 166, at 8; *see* ECF 137, at 7 n.2. Olivet also represents that it will not relitigate the dismissed trade dress infringement, dilution, and unfair competition claims concerning Sterilite's wastebasket lids. ECF 166, at 9.

Nevertheless, Olivet contends that because Sterilite plans to introduce evidence concerning its wastebasket lids in support of its tortious interference claim, evidence or argument concerning the dismissed wastebasket claims may be warranted for purposes of clarification. The Court agrees with Olivet, and concludes that Sterilite's motion is premature, because it is unclear how argument or evidence on Sterilite's wastebasket lids will come in at trial. *See Burnett v. Ocean Props., Ltd.*, No. 16-cv-00359-JAW, 2018 WL 5259460, at *1 (D. Me. Oct. 22, 2018) (dismissing without prejudice motion in limine to exclude discussion at trial of "any claims dismissed or resolved at the summary judgment stage" because it was "unable to perform the Rule 403 balancing analysis without more specificity as to what evidence [plaintiff] is seeking to admit"); *Hannah v. Wal-Mart Stores, Inc.*, No. 12-cv-1361-VAB, 2017 WL 690179, at *2-*3 (D. Conn. Feb. 21, 2017) (prohibiting plaintiffs from "re-try[ing] issues before a jury that ha[d] already been dismissed on summary judgment" but denying without prejudice wholesale exclusion "so that the evidence [could] be considered in its appropriate factual context" at trial), *aff'd sub nom. Hannah v. Walmart Stores, Inc.*, 803 F. App'x 417 (2d Cir. 2020). The motion will, accordingly, be denied without prejudice. To the extent this issue arises at trial, Sterilite can reassert its objection. *See Dimanche*

*v. Massachusetts Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018) ("Pretrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved.").

### VII.   Motion in Limine No. 7: Potential Commercial Impacts of Verdict.

Sterilite's seventh motion in limine seeks to preclude argument or evidence regarding the potential commercial impacts of a verdict. That motion will be granted. On relevance and unfair prejudice grounds, Sterilite seeks to exclude argument that a jury verdict in Sterilite's favor "would impact consumers by increasing the costs of relevant products or removing lower-cost product options from the market." ECF 158, at 10. Federal Rule of Evidence 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court agrees with Sterilite that the risk of unfair prejudice substantially outweighs whatever probative value this evidence or line of argument might have. *See Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029-ADB, 2022 WL 10489059, at *6 (D. Mass. Oct. 17, 2022) (precluding argument "suggesting that a jury verdict in [plaintiff's] favor would impact patients or consumers by . . . increasing costs or removing a product option from the market" because "whatever relevance it has [was] substantially outweighed by the danger of unfair prejudice"). This conclusion does not, however, prevent Olivet from offering evidence or argument at trial that its products are less expensive than Sterilite's, or that its lower prices were a factor in Walmart's decision to sell those products. *See* ECF 166, at 10.

**OLIVET'S MOTIONS IN LIMINE**

**I.      Motion in Limine No. 1: Wastebasket Designs.**

Olivet's first motion in limine seeks to preclude evidence or argument (1) about the design of its wastebasket products, (2) that those designs copy Sterilite's wastebasket designs, or (3) that its wastebaskets infringe on Sterilite's rights. That motion will be granted with respect to the third category of evidence or argument and denied with respect to the first and second categories. As to the third category of evidence or argument, Sterilite represents that it does not plan to argue at trial that Olivet infringed its intellectual property rights with respect to the wastebaskets. *See* ECF 163, at 1. The Court agrees that, because Sterilite's trade dress infringement, dilution, and unfair competition claims with respect to its wastebasket lids were dismissed at summary judgment, Sterilite will not be permitted to introduce evidence or argument that Olivet's wastebaskets infringe its intellectual property rights.

Olivet's motion will be denied with respect to the first two categories of evidence or argument. As the Court recently clarified, evidence concerning Olivet and Sterilite's wastebaskets is relevant to Sterilite's tortious interference claim. ECF 155. Olivet contends that evidence regarding the design and copying of Sterilite's wastebaskets has no bearing on Sterilite's theory "'that had Olivet not offered to sell Walmart knock-offs of the drawers and cabinets, Walmart would not have agreed to purchase the knock-off wastebaskets, and instead would have continued to purchase those products from Sterilite.'" ECF 157, at 3 (quoting ECF 155). But whether Olivet's wastebaskets are knock-offs is a part of, and relevant to, this theory. Olivet also argues that the admission of the wastebasket design and copying evidence would be prejudicial because the jury is likely to conflate the trade dress and tortious interference issues. The Court is not persuaded. *See Gonzalez-Marin v. Equitable Life Assurance Soc'y of the U.S.*, 845 F.2d 1140, 1146 (1st Cir.

1988) (affirming denial of motion in limine that "contained conclusory allegations of prejudice without setting forth facts which would support a decision to exclude"). Olivet's final hearsay objection is similarly rejected because it is wholly undeveloped. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." (quotation marks omitted)).

### II.    Motion in Limine No. 2: Intentional Copying.

Olivet's second motion in limine seeks to preclude evidence or argument that it copied Sterilite's product designs. That motion will be denied. Olivet first contends that this evidence is irrelevant. But as the Court observed at summary judgment, "'proof of intentional copying'" is probative of secondary meaning, and "the record reflects that Olivet copied all five of Sterilite's products." ECF 137, at 33-34 (quoting *Yankee Candle*, 259 F.3d at 43-45). It is for the jury to decide whether Olivet sought to "'pass off'" its cabinets and drawers as Sterilite's and whether "'the evidence of copying was . . . sufficiently probative of secondary meaning.'" *Id.* at 35 (quoting *Yankee Candle*, 259 F.3d at 45). Olivet also argues that inclusion of this evidence would be prejudicial because the jury might not be able to distinguish between copying, which requires willfulness, and passing off, which requires bad faith. This concern is speculative and unsupported. *See Gonzalez-Marin*, 845 F.2d at 1146 (upholding denial of motion in limine that "contained conclusory allegations of prejudice").

### III.    Motion in Limine No. 3: Website Reviews or Customer Service Communications.

Olivet's third motion in limine seeks to preclude evidence or argument concerning actual consumer confusion in the form of (1) customer reviews posted on retailer websites, (2) its own customer complaint log, and (3) customer complaints received by Sterilite. That motion will be

9

denied in part and denied without prejudice in part. Olivet contends that these categories of evidence are inadmissible under Federal Rules of Evidence 401, 403, 802, and 901. As to relevance, evidence of actual consumer confusion provides circumstantial evidence of secondary meaning. *See* ECF 137, at 33 (citing *Yankee Candle*, 259 F.3d at 43-45). Such evidence is also relevant to Sterilite's dilution claim under M.G.L. c. 110H, § 13. *See Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217, 232 (D. Mass. 2010) ("[L]ikelihood of dilution . . . can result from . . . reduction of the value of the mark caused by actual or potential confusion[.]" (quotation marks omitted)). Olivet also argues, without evidentiary support, that Sterilite's recorded customer calls are irrelevant because they are "misdirected communications." ECF 157, at 10. Sterilite responds that those calls show customers contacting Sterilite about Olivet's knock-off products. While neither party provides sample calls to support their arguments, such calls are admissible to assist the jury in determining whether they demonstrate actual confusion for purposes of secondary meaning or likelihood of confusion. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 10 (1st Cir. 2004) ("[A] factfinder could reasonably infer that the misdirected communications . . . showed confusion among purchasing companies[.]"); *Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp.*, 376 F. Supp. 2d 251, 262-63 & n.7 (D.R.I. 2005) (finding misdirected communications relevant to likelihood of confusion in part because they "could support the inference that [plaintiff's] goodwill and reputation had been damaged"). The probative value of customers' communications and reviews also outweighs any potential undue prejudice to Olivet under Rule 403.

    Olivet next asserts that these materials constitute improper hearsay. Hearsay evidence is inadmissible unless an exception applies. Fed. R. Evid. 802, 803. Sterilite counters that the customer reviews and voicemails are not hearsay because they are not being offered "to prove the

truth of the matter asserted" in those communications. Fed. R. Evid. 801(c)(2); *see Ira Green, Inc. v. Mil. Sales & Serv. Co.*, 775 F.3d 12, 19 (1st Cir. 2014) ("[A]n out-of-court statement is not hearsay if it is relevant regardless of its truth (say, to show state of mind)."). Sterilite also contends that such evidence is admissible under multiple hearsay exceptions, including to demonstrate the customer's present sense impression and then-existing state of mind. *See* Fed. R. Evid. 803(1), (3). Sterilite similarly argues that Olivet's own customer call log is not hearsay if offered to prove its existence or the volume of complaints and, in any event, would be subject to the business record exception if offered for the truth of the matter. *See* Fed. R. Evid. 803(6).

It is premature to make these hearsay determinations in advance of trial. *See Bos. Gas Co. v. Century Indem. Co.*, No. 02-cv-12062-RWZ, 2005 WL 2901891, at *2 (D. Mass. Nov. 4, 2005) (denying motion in limine as "premature" because the challenged "documents may well fit within one or more exceptions to the hearsay rule"); *Am. Aerial Servs., Inc. v. Terex USA, LLC*, No. 12-cv-361-JDL, 2015 WL 1947227, at *4 (D. Me. Apr. 29, 2015) (similar). The Court will need to make a particularized assessment whether each customer review and complaint constitutes hearsay and, if so, whether an exception applies. Olivet may accordingly renew its hearsay objection at trial. *See Dimanche*, 893 F.3d at 6 n.6.

Olivet finally argues that the customer reviews, call logs, and voicemails cannot be properly authenticated and are unsupported by personal knowledge. Under Federal Rule of Evidence 901, courts "must evaluate 'whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be.'" *United States v. Torres-Correa*, 23 F.4th 129, 133 (1st Cir. 2022) (quoting *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017)). Sterilite responds that it can authenticate the customer reviews and voicemail recordings at trial through "[t]estimony of a witness with knowledge." Fed. R. Evid. 901(b)(1).

11

Sterilite further asserts that Olivet's customer service line and related emails are authentic in part because Olivet produced them during discovery. *See Joseph v. Lincare, Inc.*, 989 F.3d 147, 156-57 (1st Cir. 2021) ("When a party in response to discovery requests points to a document that appears on its face to be a business record of the producing party, the other parties should be able to treat the document as authentic unless someone offers some reason to think otherwise, before it is too late to do something about it."). Given Sterilite's representations, it is likewise too early to resolve Olivet's authentication objection. *See United States v. Burgos-Montes*, No. 06-cr-009-JAG, 2006 WL 3692583, at *4 (D.P.R. Nov. 1, 2006) ("Since the government has proffered it will have the law enforcement agents and any participating officer available to authenticate the recordings at trial, defendant Burgos' argument as to authentication at this stage is premature."). Olivet may renew this objection at trial as well. *See Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("[A] party must renew at trial its motion to . . . exclude evidence if there has been an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial.").

Accordingly, Olivet's Rule 401 and 403 objections on relevance and unfair prejudice grounds will be denied, while its Rule 802 and 901 objections on hearsay and authentication grounds will be denied without prejudice as premature.

**IV.     Motion in Limine No. 4: Advertising After Olivet Introduced its Products.**

Olivet's fourth motion in limine seeks to preclude evidence or argument concerning Sterilite's advertising that postdates Olivet's introduction of its allegedly infringing products. That motion will be denied. Olivet argues that Sterilite's advertisements after Olivet introduced its products in September 2021 are irrelevant because "[s]econdary meaning must be established at the time of infringement." *Bern Unlimited, Inc. v. Burton Corp.*, 95 F. Supp. 3d 184, 203 (D. Mass. 2015) (citing *Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency*, 214 F.3d 432, 438-40 (3d

Cir. 2000)); *see* ECF 137, at 3 (citing ECF 115, ¶¶ 44, 46, 333); McCarthy on Trademarks and Unfair Competition § 16:34 (5th ed.) (collecting cases holding that "the senior user must prove the existence of a secondary meaning in its designation at the time and place that the junior user first began use of the accused mark"). But "'[r]elevancy is a very low threshold' that only requires the tendered evidence to 'move the inquiry forward to some degree.'" *United States v. Rathbun*, 98 F.4th 40, 51 (1st Cir. 2024) (quoting *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021)). Rule 401 broadly defines relevancy as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Sterilite's post-September 2021 advertisements are, at a minimum, relevant to the likelihood of confusion inquiry, which Olivet did not contest at summary judgment.[1] ECF 137, at 26 n.9; *see 165 Park Row, Inc. v. JHR Dev., LLC*, No. 12-cv-106-NT, 2013 WL 6384819, at *2 (D. Me. Dec. 6, 2013) (denying motion in limine to exclude trademark holder's advertising after the alleged infringer's first use, in part because that evidence was relevant to likelihood of confusion). To determine whether confusion is likely, courts examine eight factors, including "the relationship between the parties' advertising" and "the strength of the plaintiff's [trade dress]." *Lund*, 163 F.3d at 43 (quotation marks omitted). In light of the low threshold for relevance, these advertisements are relevant for purposes of determining secondary meaning as well, especially given that the same image of Sterilite's drawers appeared in advertisements from 2018. ECF 144, at 10-11 (citing O'Shea report); *see 165 Park Row*, 2013 WL 6384819, at *2 (denying exclusion of "post-June 28, 2011 material" because some of it was "relevant as circumstantial evidence of whether the Plaintiff's mark achieved secondary meaning before June 28, 2011"); *P & P Imports*

---

[1] Olivet does not identify what specific evidence it seeks to exclude but previously highlighted Sterilite's three social media posts from June 7, 2022 that were cited in the Court's summary judgment decision. ECF 142, at 5-6; ECF 144, at 10-11; ECF 137, at 38 (citing ECF 115, ¶ 116).

13

*LLC v. Johnson Enters., LLC*, No. 19-cv-523-DOC-JDEX, 2024 WL 1136336, at *6 (C.D. Cal. Jan. 24, 2024) ("[W]hile evidence of secondary meaning or likelihood of confusion after the date of infringement in October 2017 may be entitled to lesser weight, the evidence is still admissible."). Sterilite's household plastics industry expert, George O'Shea, also relied, in part, on its post-September 2021 advertisements. ECF 115, ¶ 116; *see YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 15-cv-597-RP, 2017 WL 11679718, at *2 (W.D. Tex. Jan. 27, 2017) (denying motion to exclude expert who considered advertising after the alleged trade dress infringement date because his reliance on such evidence went "to the weight, rather than admissibility, of his testimony"). Sterilite will, accordingly, be permitted to admit evidence of its advertising after September 2021.

**V.     Motion in Limine No. 5: Olivet's Common Ownership and Affiliate.**

Olivet's fifth motion in limine seeks to preclude evidence or argument about (1) the common ownership of Olivet and its affiliate, Ecotech, by their parent company, FTI Group, and (2) Ecotech's profits and losses. That motion will be granted in part and denied in part. Sterilite represents that it does not plan to introduce evidence of Ecotech's profits or losses at trial and thus does not object to the second portion of Olivet's motion, but reserves the right to present such evidence to the Court should the jury find that Olivet infringed its trade dress. ECF 163, at 16 n.5.[2]

---

[2] Sterilite maintains that Ecotech's profits and losses would be relevant for purposes of determining Sterilite's award of "defendant's profits," in the form of disgorgement damages, under the Lanham Act because of the way costs are allegedly shifted between Olivet and Ecotech. 15 U.S.C. § 1117(a). The Supreme Court recently held that this provision of the Lanham Act permits courts to "award only profits properly ascribable to the defendant itself," not "those of separately incorporated affiliates not parties to the suit." *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 684 (2025); *see* ECF 165 (Olivet's notice of that decision). The "so-called just-sum provision," however, provides that "'[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances.'" *Dewberry Grp.*, 145 S. Ct. at 687 (quoting 15 U.S.C. § 1117(a)). At this juncture, it is premature to address the merits of Sterilite's disgorgement analysis. *See* ECF 168 (Sterilite's response to Olivet's notice).

14

With respect to the first portion, Olivet argues that its relationship to FTI Group and Ecotech has no bearing on the claims or defenses in this case. But such evidence is relevant because, as Sterilite explains, Olivet, FTI Group, and Ecotech work together and employees have overlapping roles across the companies. ECF 163, at 16-17; *see, e.g.*, ECF 118-13, at 3, 7 (emails between Olivet and Ecotech employees). Olivet acknowledges that "it shares a corporate parent and certain personnel" with Ecotech. ECF 157, at 12. Olivet also produced profit and loss data for Ecotech, ECF 105-5, at 7, and a purchase order that it sent in July 2021 to Ecotech, ECF 111, ¶ 12; ECF 111-10. Accordingly, Sterilite will be permitted to introduce evidence and argue at trial about Olivet's affiliation with Ecotech and ownership by FTI Group, but not regarding Ecotech's profits and losses.

## VI. Motion in Limine No. 6: Other Olivet Litigation.

Olivet's sixth motion in limine seeks to preclude evidence or argument regarding other litigation in which it is a party. That motion will be granted. Olivet has settled three prior lawsuits filed against it by different plaintiffs that alleged, among other claims, unfair competition and dilution. ECF 157, at 13-14; ECF 163, at 18. Sterilite argues that these cases, including one similarly involving Olivet's products at Walmart, are relevant to show Olivet's intentional production of knock-off goods. True, "the defendant's intent in adopting its mark" is one of the likelihood of confusion factors. *Lund*, 163 F.3d at 43 (quotation marks omitted). That limited relevance, however, is outweighed by the danger that the evidence would be unfairly prejudicial, confuse the jury, and waste time at trial. *See* Fed. R. Evid. 403.[3] Admitting evidence about Olivet's three previous cases would cause "'confusion and consumption of a great deal of unnecessary

---

[3] Having so concluded, the Court does not reach the parties' alternative arguments about excluding or admitting the evidence based on Federal Rules of Evidence 404 and 408.

15

time'" because it "'would inevitably result in trying those cases . . . before the jury'" and "'[t]he merits of [these] cases would become inextricably intertwined with the case at bar.'" *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998) (quoting *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989)). That these cases settled without any adjudicated findings of fact further diminishes their relevance, because a party's decision to settle may "have little to do with the basic facts of a case." *Kinan*, 876 F.2d at 1034. Sterilite will therefore be precluded from offering evidence or argument about Olivet's prior litigation. *See id.* at 1034-35 (affirming exclusion of two previously settled cases against the defendant on Rule 403 grounds); *CPC Int'l*, 144 F.3d at 45 (same for two prior judicial decisions involving the plaintiff); *see also Unicolors, Inc. v. Urb. Outfitters, Inc.*, 686 F. App'x 422, 424-25 (9th Cir. 2017) ("Evidence of prior [copyright infringement] lawsuits should be excluded when the possible prejudice to a party outweighs any probative value.").

**CONCLUSION AND ORDER**

For the foregoing reasons, Sterilite's motions in limine, ECF 158, and Olivet's motions in limine, ECF 157, are GRANTED in part and DENIED in part as follows. Sterilite's second, fourth, and seventh motions will be granted; its first and third motion will be granted in part and denied in part; its fifth motion will be denied; and its sixth motion will be denied without prejudice to its renewal at trial. Olivet's sixth motion will be granted; its first and fifth motions will be granted in part and denied in part; its second and fourth motions will be denied; and its third motion will be denied in part and denied in part without prejudice to its renewal at trial.

SO ORDERED.

Dated: March 20, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE