UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| STERILITE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-10327-JEK |
| | ) | |
| OLIVET INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
ENHANCED DAMAGES AND DEFENDANT'S MOTION FOR A
NEW TRIAL ON DAMAGES OR ALTERNATIVELY REMITTITUR**

**KOBICK, J.**

Following a nine-day trial in April 2025, the jury awarded plaintiff Sterilite Corporation $11 million in damages for defendant Olivet International, Inc.'s willful infringement of the trade dress in Sterilite's storage cabinets and drawers. That award comprised the $2,656,711 in damages that Sterilite requested in lost profits and an additional $8,343,289 in damages for loss of goodwill. The jury also found that Olivet tortiously interfered with Sterilite's business relationship with Walmart, Inc. and awarded Sterilite, as it had requested, an additional $5.2 million in lost profits for its wastebasket lids. Pending before the Court are Sterilite's motion for enhanced damages pursuant to the Lanham Act, 15 U.S.C. § 1117(a), and Olivet's motion for a new trial on damages under Federal Rule of Civil Procedure 59 or, alternatively, remittitur.

For the reasons that follow, Olivet's motion for remittitur will be granted with respect to the loss of goodwill damages but denied as to the lost profits for Sterilite's cabinets and drawers. Sterilite has until December 23, 2025 to inform the Court of its decision to either accept this remittitur or opt for a new trial on the issue of goodwill damages only. The Court reserves judgment

on Sterilite's motion for enhanced damages because that ruling depends on Sterilite's decision on remittitur. Should Sterilite opt for a new trial, that trial would address loss of goodwill damages, and Sterilite's motion for enhanced damages would be denied without prejudice. But should Sterilite accept remittitur, Sterilite's motion for enhanced damages would be granted and Sterilite's damage award in lost profits for its cabinets and drawers would be doubled to account for the difficult-to-quantify reputational harms caused by Olivet's trade dress infringement.

## DISCUSSION

The Court assumes the parties' familiarity with the underlying facts and proceeds directly to resolving their respective post-trial motions on damages.

### I.  **Olivet's Motion for a New Trial on Damages or Alternatively Remittitur.**

Olivet moves for a new trial on damages or, alternatively, for remittitur because, in its view, the record does not support the jury's award of either $2,656,711 in lost profits or $8,343,289 in loss of goodwill for Sterilite's cabinets and drawers. Under Federal Rule of Civil Procedure 59, a court may "grant a new trial on all or some of the issues . . . to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).[1] On a motion seeking a new trial on damages, the court may set aside the jury's verdict and order a new trial only if that verdict "'exceeds any rational appraisal or estimate of the damages that could be based on the evidence before the jury.'" *Rodríguez-Valentín*

---

[1] Sterilite contends that Olivet's arguments in this motion are waived because they "all" concern the sufficiency of the evidence, which is governed by Federal Rule of Civil Procedure 50, and were not raised in its Rule 50(a) motion. ECF 259, at 2-3 & n.3. But Olivet clearly seeks relief under Rule 59, and in any case, as Sterilite acknowledges, "waiver under Rule 50 does not result in waiver under Rule 59." *Id.* at 3 n.3; *see Falto De Román v. Mun. Gov't of Mayagüez*, 46 F.4th 51, 55-56 (1st Cir. 2022) (finding Rule 59 motion for a new trial "preserved" even when plaintiff waived her Rule 50(b) motion by "fail[ing] to move for judgment before her case was submitted to the jury").

*v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 22 (1st Cir. 2022) (quoting *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009)). The court must view the evidence in the light most favorable to the verdict, and it may not upset the jury's assessment of damages unless that assessment "is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" *Smith v. Kmart Corp.*, 177 F.3d 19, 30 (1st Cir. 1999) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 215 (1st Cir. 1987)).

    A.    <u>Lost Profits.</u>

Olivet argues that the evidence does not support the jury's determination that its trade dress infringement caused Sterilite to lose $2,656,711 in profits on its cabinets and drawers. To demonstrate causation under the Lanham Act, Sterilite "must demonstrate that the [infringement] actually harmed its business." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 318 (1st Cir. 2002). "'A precise showing is not required, and a diversion of sales . . . would suffice.'" *Id.* (quoting *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977)). While Sterilite "must prove the profits [it] would have made but for [Olivet's] infringement," it need not "'negate every conceivable intervening factor which might have caused a decline in sales.'" *Avco Corp. v. Turn & Bank Holdings, LLC*, No. 23-1609, 2024 WL 3439771, at *3 (3d Cir. July 17, 2024) (quoting McCarthy on Trademarks and Unfair Competition § 30:79 (5th ed.) ("McCarthy")); *see First Act Inc. v. Brook Mays Music Co.*, 429 F. Supp. 2d 429, 439 (D. Mass. 2006) ("[T]he Court must ensure that the facts adequately support the damages awarded and establish a causal link between those damages and the plaintiff's injury[.]").

Olivet does not contest the amount of lost profits the jury attributed to its infringement of Sterilite's trade dress. Rather, Olivet contends that *any* award of lost profits was not supported by the evidence because Sterilite was responsible for its own lost profits. As Olivet sees it, the

3

evidence shows that, during the COVID-19 pandemic, Sterilite was unable to fulfill its customers' orders and therefore decided to allocate its stock of cabinets and drawers among different customers. As a consequence of this policy, Olivet says, Sterilite supplied only 63% of the cabinets and drawers that Walmart demanded, and Walmart decided to look to other suppliers of cabinets and drawers. Olivet highlights, in particular, a July 29, 2021 email from Walmart stating that it had decided "to exit the Sterilite business in plastic shelving" "[a]s a result of [Sterilite's] inability to keep pace with customer demand," "poor instock, not accepting [fines] due to loss sales, and poor communications as a business partner." ECF 250-17.

      The jury heard this evidence and rejected Olivet's theory of causation based on other trial evidence that contradicted Olivet's account. For example, Olivet's Chief Growth Officer, Megan Overbey, testified that, after Walmart "asked [Olivet] to provide [cabinets and drawers] because it liked the look of Sterilite's products," Olivet sought "to follow [Sterilite's] spec detail exactly" in order "to replace Sterilite" at Walmart with Olivet's knock-off products. ECF 222, at 120:2-18, 139:18-23, 152:18-21; ECF 223, at 27:6-9. She and Olivet's Chief Executive Officer, Terry Muldoon, also admitted to copying the designs of Sterilite's products. ECF 223, at 23:1-16, 35:7-10; ECF 225, at 63:3-4, 67:14-15, 68:1-2, 72:16-18. Sterilite's Vice President of the Walmart account, Ken MacDonald, similarly testified that "Walmart couldn't buy . . . exact copies of [Sterilite's] goods if Olivet didn't copy them." ECF 220, at 32:18-33:6. Three months after Walmart notified Sterilite that it was terminating Sterilite's cabinets and drawers business, MacDonald discovered Olivet's versions of those products at Walmart. *Id.* at 29:2-30:19. He wrote in an email that "'it seem[ed] like Walmart had a plan'" because "in [his] 30 years' experience it takes longer than 60 days to design, engineer, build molds, prepare with inventory, to put yourself into position to serve Walmart well for a program of this magnitude." *Id.* The evidence further

revealed that Olivet offered to sell its products to Walmart at a lower price than Sterilite. ECF 222, at 72:10-73:11.

Viewed as a whole, the trial evidence supports the jury's finding that Olivet's infringement of Sterilite's trade dress in its cabinets and drawers caused Sterilite to lose $2,656,711 in profits. And it sufficiently demonstrates that had Olivet not agreed to replicate Sterilite's products for Walmart (and at a lower price), Walmart would not have terminated Sterilite's business on those products and Sterilite would not have lost the associated profits. The jury need not have credited Olivet's "version of the events," and the fact that the jury "chose to accept [Sterilite's account] . . . is not grounds for a new trial" where, as here, it is supported by the weight of the evidence. *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 551-52 (1st Cir. 2019); *cf. Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 75 (1st Cir. 2008) (affirming denial of Rule 50(b) motion on trademark infringement claim where, among other evidence, "the jury heard testimony that [plaintiff's] revenues in the quarter immediately following the launch of [defendant's] campaign were '[p]robably the lowest in the history of the company'"); *Cashmere*, 284 F.3d at 318-20 (reversing grant of summary judgment on false advertisement claim because the "jury [was] best suited to resolve" the "inconsistent positions" of the parties' witnesses on causation where plaintiffs lost sales to defendant, which sold its product for $5 less). Olivet's motion for a new trial or for remittitur on Sterilite's lost profit damages is denied.

B.   Loss of Goodwill.

Olivet further contends that the jury's award of $8,343,289 to Sterilite for loss of goodwill is unsupported by the trial record and amounts to sheer speculation, because no witness or evidence

5

attempted to quantify the value of Sterilite's reputation before and after Olivet's trade dress infringement.

Damages for loss of goodwill and reputational harm can be recovered in a trade dress infringement action. *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 37 (1st Cir. 2002) ("a plaintiff may . . . suffer harm to the goodwill associated with its mark"). And because "[r]eputational damages are often difficult to quantify," plaintiffs "need not prove such damages with exacting precision." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 n.12 (8th Cir. 1999); *see Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996) ("By its very nature injury to goodwill and reputation is not easily measured."). Courts "must be especially hesitant to disturb a jury's determination of damages in cases involving [such] intangible and non-economic injuries." *Limone v. United States*, 579 F.3d 79, 105 (1st Cir. 2009) (quoting *Langevine v. D.C.*, 106 F.3d 1018, 1024 (D.C. Cir. 1997)). That determination, which "requires the decisionmaker to translate intangibles . . . into quantifiable dollars and cents," "is a choice largely within the jury's ken." *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1162 (1st Cir. 1996). Nevertheless, while "'mathematical precision'" is not required, plaintiffs "'must provide sufficient evidence to take the amount of damages out of the realm of speculation and conjecture.'" *Coco Rico, LLC v. Universal Ins. Co.*, 141 F.4th 321, 329 (1st Cir. 2025) (quoting *Cordeco Dev. Corp. v. Santiago Vasquez*, 539 F.2d 256, 262 (1st Cir. 1976)).

The evidence at trial supported, and Olivet does not contest, that Olivet's trade dress infringement harmed Sterilite's reputation. *See* ECF 264, at 3.[2] Customer complaints and witness

---

[2] With respect to Sterilite's request for loss of goodwill damages, the Court instructed the jury that:

> Sterilite also seeks damages for the value of the goodwill lost as a result of Olivet's conduct. Goodwill is an employer's favorable reputation and relationship with its

testimony demonstrated that Sterilite's brand suffered from customer confusion over Olivet's inferior cabinets and drawers. *See* ECF 259, at 5-8. For example, Sterilite's Vice President of Engineering, Paul Benham, testified that Olivet's products were "so inferior" given their "warped [and] distorted" parts. ECF 219-1, at 121:7-14. Sterilite's product design expert, David Adriaansen, similarly testified to the "lower quality" of Olivet's products. ECF 221, at 105:12-14. Product reviews, in turn, revealed that customers attributed Olivet's inferior products to Sterilite. *See* ECF 259, at 6-7. One customer complained, for instance, about "how cheaply these ones were made compared to the first set [she] bought." Trial Ex. 79. Sterilite's Vice President of Marketing, Richard Ahern, testified that these negative reviews "hur[t] [Sterilite's] brand" because "if people have a negative impression about something that they think is Sterilite . . . it can have a sort of halo effect above [the] brand that's negative." ECF 219-1, at 175:10-18. Sterilite's plastics expert, George O'Shea, likewise testified that such reviews were the tip of the iceberg and imply that many more customers had similar complaints. ECF 220, at 157:7-22.

Rather than challenge the jury's finding of reputational harm, Olivet contends that the amount the jury awarded Sterilite for loss of goodwill—$8,343,289—is unsupported by the evidence or reasonable inferences from that evidence and is instead based solely on speculation or

---

customers. The goodwill attached to a product is a part of the overall business value. Sterilite must prove that Olivet injured its goodwill either by injury to Sterilite's general business reputation or by damage to the reputation of a particular product. If Sterilite proves injury to its goodwill, you should award damages to Sterilite. The amount of damages is the difference between the value of the goodwill before and after Olivet's wrongful actions.

ECF 226, at 120:20-121:6. The jury was also instructed that damages "may not be speculative," and that "[i]f Sterilite is entitled to a verdict in accordance with these instructions but the evidence before you is insufficient to show that Sterilite has sustained any substantive damages, then you may return a verdict for Sterilite on one or more theories of liability and fix the amount of compensatory damages in a nominal sum such as $1." *Id.* at 119:23-25, 121:9-15.

7

conjecture. *See Rodríguez-Valentin*, 27 F.4th at 22. On this, the Court agrees with Olivet. Not a single witness testified about the approximate dollar amount of Sterilite's lost goodwill or how that amount could be calculated. *Compare Porous Media*, 173 F.3d at 1122-23 (affirming denial of motion for a new trial challenging the $1.6 million goodwill damages verdict in part because of testimony that defendant caused plaintiff to lose "'between $5 million and $10 million' in going-concern value"), *with Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 914 (8th Cir. 2005) (vacating $30 million goodwill damages award as "conjecture" where there was "no evidence giving a measure of, or a way of measuring, how much less" plaintiff was worth due to defendant's actions). Nor did Sterilite produce any evidence of how much it spent promoting its cabinets and drawers before Olivet's infringing conduct, or how much it spent or would need to spend on corrective advertising after that infringing conduct. *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112-13 (9th Cir. 2012) (affirming denial of motion for remittitur or a new trial where plaintiff presented evidence of "the original value of [its] goodwill" through ten years of advertising expenditures, "prov[ed] that customers were very angry with, and blamed [it] for, problems caused by [defendants]," and "directed the jury to consider [its] need to undertake corrective advertising"). At trial, Sterilite did not even mention the cost of future corrective advertising. It presented evidence concerning its total advertising costs for all of its products, but its evidence did not specify the percentage of those costs attributable to the cabinets and drawers, nor did it tie its advertising costs to its claimed reputational harms. The evidence that Sterilite spent $30 million on accrual advertising in the past five years and approximately $40,000 per year on print advertising between 2011 and 2020 also does not provide support for the jury's award. *See* ECF 219-1, 153:7-11, 166:2-7 (Ahern); ECF 220, at 131:1-3 (O'Shea). Those amounts were untethered to the harm that Olivet's infringement inflicted on Sterilite's reputation.

8

Absent evidence that sought to quantify the value of Sterilite's damaged reputation, the jury was forced to speculate about the amount of that loss. During closing argument, Sterilite asked the jury to award a "number" for "the value of [the] reputational harm" should it find that "Sterilite's reputation is worth something, and it was harmed." ECF 226, at 84:9-13. But Sterilite did not explain how to approximate that number or where to look in the record to determine such a number.[3] There is simply no hint of an evidentiary basis for the $8,343,289 awarded in loss of goodwill damages for infringement of Sterilite's trade dress in its cabinets and drawers. Indeed, that sum exceeds the $7,863,871 that Sterilite sought in total lost profits for its cabinets, drawers, *and* wastebasket lids, but the wastebasket lids were not even a part of the trade dress infringement claims presented to the jury. *See* ECF 211, at 1, 17 (Sterilite's Rule 50(a) motion requesting "compensatory damages" or "lost profits" of $7,863,871); ECF 226, at 83:8-10, 84:21-23 (closing argument seeking lost profits of $2,656,711 for the cabinets and drawers and $5,204,160 for the wastebasket lids); ECF 218, at 69:11-14 (opening statement asking for "nearly 8 million in lost profits" as "full damages").

Olivet has accordingly met its substantial burden to show that, when viewing the evidence in the light most favorable to Sterilite, the jury's loss of goodwill damages award is excessive, speculative, and unsupported by the record. *Cf. S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 67 (1st Cir. 2000) (affirming vacatur of $100,000 loss of goodwill award on Rule 50

---

[3] Sterilite argued at the hearing that the First Circuit's precedent barring attorneys from requesting a specific dollar amount for pain and suffering damages would have prevented it from requesting a specific dollar amount for loss of goodwill damages. *See Burnett v. Ocean Props., Ltd.*, 987 F.3d 57, 77 n.23 (1st Cir. 2021); *Rodríguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 37 & n.3 (1st Cir. 2011); *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 78-79 (1st Cir. 2010). Whether or not that precedent applies to *all* noneconomic injuries, as Sterilite suggests, that case law does not prevent a party from pointing the jury at closing argument to evidence that bears on the value of reputational harm.

motion where plaintiff's "estimated loss . . . was not adequately supported"). The appropriate remedy is to remit the $8,343,289 awarded to Sterilite for loss of goodwill. *Compare Darbeevision, Inc. v. C & A Mktg., Inc.*, No. 18-cv-725-AG-SSX, 2019 WL 7166976, at *4 (C.D. Cal. Nov. 18, 2019) (in breach of contract action, remitting entire $17,500 in goodwill damages for being "based on speculation" where plaintiff did not "offer any evidence quantifying its alleged loss of goodwill" and argued to the jury that "it could 'do anything' in awarding [such] damages"), *with First Act*, 429 F. Supp. 2d at 439-40 (remitting reputational damages award in Lanham Act false advertising case from $5,125,000 to $555,061 because only that amount was needed for corrective advertising to "restore [plaintiff's] reputation").

Sterilite's damages award for its cabinets and drawers is therefore remitted to the maximum amount supported by the evidence: $2,752,229, which constitutes $2,656,711 in lost profits, as proven at trial, plus $95,518 in additional lost profits, to which the parties agree Sterilite is entitled from December 2024 through April 2025. *See* ECF 266-2, ¶ 4; *Conjugal P'ship Comprised by Joseph Jones & Verneta G. Jones v. Conjugal P'ship Comprised of Arthur Pineda & Toni Pineda*, 22 F.3d 391, 398 (1st Cir. 1994).[4] This remittitur includes the lost profits of Sterilite's cabinets and drawers but excludes its loss of goodwill damages. Sterilite may reject this remittitur and opt for a new trial on the issue of goodwill damages only. *See Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 508 (1st Cir. 2011). The Court does not anticipate allowing the parties, at any such trial, to call witnesses other than those called at the April 2025 trial or to introduce evidence not

---

[4] The parties also agree, for purposes of this motion, that Sterilite is entitled to the $5.2 million awarded by the jury, plus $1,642,308 in lost profits for its 11- and 13-gallon wastebasket lids from December 2024 through April 2025. *See* ECF 266-2, ¶ 4. In its Rule 59 motion, unlike its previously denied Rule 50(a) motion, Olivet has not challenged the $5.2 million in damages for tortious interference with business relationships associated with the lost profits of Sterilite's wastebasket lids. *See* ECF 202, 206, 248. The Court will, per the parties' agreement, increase the damages award for the tortious interference claim to $6,842,308.

previously identified to the Court. *See* Charles A. Wright & Arthur R. Miller, 11 Federal Practice & Procedure § 2803 (3d ed., May 21, 2025 Update) (explaining that "[i]f a new trial is granted, the district court has broad discretion in its control and management of the new trial," and that "[d]ecisions respecting the admission of additional witnesses and proof should be guided by considerations of fairness and justice to all parties"). Sterilite must inform the Court by December 23, 2025 of its decision.

## II.  Sterilite's Motion for Enhanced Damages.

Sterilite moves for an enhancement of damages pursuant to 15 U.S.C. § 1117(a). The Lanham Act provides that "[i]n assessing damages the court may enter judgment, according to the circumstances of the case" and "subject to the principles of equity," "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). That sum "shall constitute compensation and not a penalty." *Id.* Sterilite seeks such an enhancement of the jury's award of $2,752,229 in lost profits for its cabinets and drawers for four reasons.[5]

Sterilite first contends that enhancement is warranted to deter future willful infringement by Olivet. Lanham Act cases in the First Circuit "usually require willfulness . . . to allow . . . more than single damages." *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 191 (1st Cir. 2012). The jury here found that "Olivet's infringement of Sterilite's trade dress was willful." ECF 216, at 1. This Court, in turn, "is bound by . . . the jury's finding of willfulness, which affect[s]" its determination of the appropriate "equitable remedy" under 15 U.S.C. § 1117(a). *Visible Sys.*, 551 F.3d at 78 & n.8. The parties agree, though, that willfulness alone is insufficient to justify an enhancement of damages. *See* ECF 255, at 4-5; ECF 266, at 4; *Visible Sys.*, 551 F.3d at 81

---

[5] Sterilite, appropriately, does not seek to enhance the lost profits damages awarded by the jury for the tortious interference claim. *See* ECF 246, at 4 & n.2.

11

("willfulness alone is not enough to justify a remedy of an accounting of defendant's profits"); *accord Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 224 n.22 (3d Cir. 2021) ("[W]e have not held that willful infringement is alone sufficient to support an enhanced award."). Pointing to Olivet's failure to investigate Sterilite's intellectual property, its admissions of intentionally copying the trade dress of Sterilite's cabinets and drawers, and its pretrial litigation tactics, Sterilite maintains that enhancement is necessary to deter any future willful infringement by Olivet.

While "some role may exist for deterrence in an award," "[t]he role of deterrence must be carefully weighed in light of the statutory prohibition on the imposition of penalties." *Tamko Roofing Prods.*, 282 F.3d at 38. Sterilite highlights Olivet's allegedly "egregious" pretrial discovery misconduct that forced it to file multiple motions to compel production. ECF 246, at 8-9. But courts are "reluctant to approve increased damages intended solely as punishment for conduct unrelated to the trademark infringement or to the actual damages caused by it." *Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, Inc., 597 F.2d 71, 77 (5th Cir. 1979). That is particularly so where, as here, Sterilite could have requested other sanctions for the alleged discovery violations at the time those violations occurred. Olivet's conduct during discovery does not, accordingly, warrant enhanced damages. *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 473 (6th Cir. 2022) ("increas[ing] the profits to penalize the defendant for discovery violations, something that other laws and court rules are better equipped to handle," is improper under the Lanham Act).

Sterilite also emphasizes that Olivet failed to investigate, and admitted to intentionally copying, Sterilite's trade dress. Although these facts may be relevant in assessing damages under 15 U.S.C. § 1117(a), the pertinent inquiry remains whether the jury's award appropriately compensates Sterilite. *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006)

(identifying six equitable factors for courts to consider, including "whether the defendant had the intent to confuse or deceive" and "whether it is a case of palming off" the product (quotation marks omitted)). To enhance that award based on the same conduct that established Olivet's liability for willful infringement, without any connection to the alleged inadequacy of the award itself, improperly "appear[s] to be punitive." *Quabaug Rubber*, 567 F.2d at 162; *see Skydive Arizona*, 673 F.3d at 1115 (reversing enhancement because "the damages award hinged upon punishing the willful conduct of [defendants]"); *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-cv-1848-H-POR, 2009 WL 160235, at *6 (S.D. Cal. Jan. 20, 2009) (denying motion for enhancement where damages "sound[ed] in punishment"). The jury's award of lost profits with respect to Sterilite's cabinets and drawers is sufficient to deter Olivet from future infringement.

Sterilite next argues that it is undercompensated by the jury's lost profits award. True, that award does not include lost profits beyond November 2024. But Olivet subsequently produced updated sales data and, as discussed, agreed to pay Sterilite under the same methodology that Sterilite's damages expert, Sara Rinke, employed to calculate its lost profits on the cabinets, drawers, and wastebasket lids. *See* ECF 255, at 9; ECF 266-2. Compensation for lost profits between December 2024 and April 2025 is not, therefore, a basis for enhancement. Sterilite additionally asserts that Olivet's data omitted online sales of the infringing products in 2023 and 2024, and that it could have sold more units than Olivet did during the infringement period. Neither of these contentions warrant enhancement either because, during the trial, Sterilite repeatedly represented to the jury that Rinke's assessment of $2,656,711 in damages was all that it sought in lost profits for its cabinets and drawers. *See* ECF 222, at 5-36:21-5-37:12 (Rinke testifying about lost profits for each product at issue). At closing, Sterilite stated that adding up the lost profits for the "2- and the 4-shelf cabinets and the drawers" reveals that "the *total* for lost profit for those

three is $2,656,711." ECF 226, at 8-83:8-10 (emphasis added). Likewise, in its opening statement, Sterilite asserted that Olivet's "wrongful conduct cost Sterilite nearly $8 million in lost profits," including for the wastebasket lids, and asked the jury "to award those *full* damages to Sterilite." ECF 218, at 69:11-14 (emphasis added).

Sterilite effectively waived its new post-trial theories of damages, and those theories are, in any event, too speculative. *See Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, 639 F. App'x 550, 557 (10th Cir. 2016) ("A damages theory omitted from the pretrial order is waived."); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) ("The primary limiting principle [in Lanham Act cases] is that the damages may not be speculative." (quotation marks omitted)); McCarthy § 30:79 ("damages may not be 'speculative'" (citation omitted)). Sterilite did not explore Olivet's lack of online sales in 2023 and 2024 with any witness at trial. Nor did Sterilite meaningfully press the theory that, based on its historical sales, it would have sold more cabinets and drawers to Walmart than Olivet did during the relevant period. Indeed, Rinke testified that "if [Sterilite] had not been replaced, it's *possible* it actually would have sold more of its products than Olivet had historically sold," but that she decided to "us[e] Olivet's unit sales in [her] calculation" instead. ECF 222, at 5-29:13-16 (emphasis added). Since the jury awarded Sterilite its requested $2,656,711 in lost profits for its cabinets and drawers, enhancement is not appropriate. *See Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 380 (W.D.N.C. 1997) (the plaintiff was "not undercompensated by the award of the amount it urged upon the jury as the full amount of its lost profit"); *cf. Coco Rico*, 141 F.4th at 328 (the jury could not "reasonably conclude that [the plaintiff] was damaged above and beyond what [it] said [its] damages were" (quotation marks omitted)).

14

Sterilite further asserts that enhancement is needed to account for the intangible benefit that Olivet received through its infringement—namely, its improved relationship with Walmart. In *Merck Eprova AG v. Gnosis S.p.A.*, upon which Sterilite principally relies, the Second Circuit affirmed a treble damages award "reflect[ing] the intangible benefits that accrued to [the defendant] as a result of its false advertising," particularly given that the parties were "direct competitors in a two-player market" and the defendant "usurp[ed] . . . [the plaintiff's] market share." 760 F.3d 247, 262-63 (2d Cir. 2014) (quotation marks omitted). While Sterilite and Olivet are competitors as well, they are not the only two manufacturers of plastic household products. The jury also awarded Sterilite the profits it lost on all five products at issue in this litigation: over $2.6 million for its cabinets and drawers and $5.2 million for its wastebasket lids. Thus, unlike the plaintiff in *Merck*, Sterilite has been "compensate[d] . . . for the business it lost as a result of" Olivet's trade dress infringement and tortious interference with its business relationship with Walmart. 760 F.3d at 262.

Sterilite finally argues that enhancement is warranted to account for the harm to its reputation as a result of confusion between its cabinets and drawers and those of Olivet. *See* ECF 266, at 2. The parties agree, and the evidence supports, that Olivet's infringement damaged Sterilite's reputation and that such "harm to [Sterilite's] goodwill" is recoverable under 15 U.S.C. § 1117(a). *Tamko Roofing Prods.*, 282 F.3d at 37; *see Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, 668 F. App'x 299, 300 (9th Cir. 2016) ("the court may consider any loss of reputation and goodwill"). It is also undisputed that "damages for loss of reputation . . . are inherently indeterminate" and thus difficult to quantify. *First Act*, 429 F. Supp. 2d at 437.

Enhancement for reputational harm would be warranted only if Sterilite were to accept remittitur. As discussed, Sterilite has the choice to either accept remittitur of the roughly $8.3

million in damages that the jury awarded for loss of goodwill or proceed to trial solely on the issue of such damages. If Sterilite were to reject remittitur and opt for a new trial, the jury could weigh the value of that loss of goodwill and, if appropriate, award damages. In that case, equity would not justify granting Sterilite's request for enhanced damages on the basis of that same loss of goodwill, and Sterilite's motion for enhanced damages would be denied without prejudice at that time. *See Guardant Health, Inc. v. Natera, Inc.*, No. 21-cv-04062-EMC, 2025 WL 2106522, at *24 (N.D. Cal. July 28, 2025) (recognizing that "[c]ourts sometimes award treble damages because economic harm is hard to prove, where there is loss to reputation and goodwill" but denying enhancement because plaintiff was compensated for reputational harm).

However, if Sterilite were to accept remittitur, it would not have received compensation for the reputational harm found by the jury. In that event, the Court would double Sterilite's lost profit damages for the cabinets and drawers to account for its past and future loss of goodwill. *See Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, No. 11-cv-9899-MWF-JEMX, 2014 WL 12580249, at *4 (C.D. Cal. July 11, 2014) ("increas[ing] the actual damages by a multiplier of 1.5" because "Defendants acted willfully or in bad faith" and the awarded damages did "not account for the intangible harm to Plaintiff's reputation and goodwill"); *see Tu Thien The*, 668 F. App'x at 300 (affirming that enhancement because "the goals of the enhanced award were to compensate for reputational harm and to deter future misconduct, not to penalize prior bad acts"). Although the jury's award for Sterilite's loss of goodwill lacked a non-speculative evidentiary basis, the principles of equity that animate 15 U.S.C. § 1117(a) give the Court discretion to adjust damages to account for situations where the factfinder is unable to identify precise dollar amounts, so long as the Court's adjustment is compensatory rather than punitive. *See Max Rack*, 40 F.4th at 473. Consistent with those principles of equity, should Sterilite accept remittitur, enhancement would

provide it "proper redress" for the reputational harms already inflicted by Olivet, as well as any ongoing reputational harm tied to the cabinets and drawers. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 343 (6th Cir. 2010) (quotation marks omitted).

Accordingly, if Sterilite were to accept remittitur, the Court would grant Sterilite's motion for enhancement and award an additional $2,752,229 in damages as redress for the loss of goodwill that it established in connection with the cabinets and drawers, but did not sufficiently quantify monetarily, at trial. The Court will defer final adjudication of Sterilite's motion for enhanced damages until Sterilite makes its decision on remittitur.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, Olivet's motion for a new trial or remittitur, ECF 248, is GRANTED in part and DENIED in part. The jury's damages award for Sterilite's cabinets and drawers is remitted to $2,752,229, which includes its lost profits but excludes its loss of goodwill damages. Sterilite has until December 23, 2025 to notify the Court whether it accepts this remittitur or instead opts for a new trial solely on the issue of goodwill damages. The Court reserves judgment on Sterilite's motion for enhanced damages, ECF 245, because that ruling depends on Sterilite's decision on remittitur. Should Sterilite reject remittitur and opt for a new trial, the motion would be denied without prejudice. Should Sterilite accept remittitur, that motion would be granted and Sterilite would be awarded an additional $2,752,229 in enhanced damages to account for the harm to its reputation. Because Sterilite is also entitled to $6,842,308 in lost profits for its wastebasket lids in connection with its tortious interference claim, Sterilite would be awarded $12,346,766 in total if it accepts remittitur.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: December 2, 2025                                        UNITED STATES DISTRICT JUDGE

17