**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| STERILITE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-10327-JEK |
| | ) | |
| OLIVET INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES AND DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

**KOBICK, J.**

Following a nine-day trial in April 2025, the jury found that defendant Olivet International, Inc. willfully infringed plaintiff Sterilite Corporation's trade dress in its storage cabinets and drawers and tortiously interfered with Sterilite's business relationship with Walmart, Inc. Pending before the Court are two post-trial motions: Olivet's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and Sterilite's motion for attorney's fees under the Lanham Act, 15 U.S.C. § 1117(a). For the reasons that follow, both motions will be denied. Olivet is not entitled to judgment as a matter of law because a reasonable jury could find, based on the evidence introduced at trial, that its infringement of Sterilite's trade dress in the cabinets and drawers more likely than not caused Sterilite to lose the wastebasket lid revenue from Walmart. Nor is Sterilite entitled to attorney's fees because this case is not exceptional.

**DISCUSSION**

The Court assumes the parties' familiarity with the underlying facts and proceeds directly to resolving their respective motions.

**I.**     <u>**Olivet's Renewed Motion for Judgment as a Matter of Law.**</u>

Olivet has filed a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In evaluating such a motion, the Court "must view the evidence in the light most flattering to the verdict and must draw all reasonable inferences therefrom in favor of the verdict." *Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 20 (1st Cir. 2022) (quotation marks omitted). The verdict must be sustained "unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." *ZipBy USA LLC v. Parzych*, 171 F.4th 55, 66 (1st Cir. 2026) (citation modified).

In Olivet's view, there was insufficient evidence to support the jury's finding on Sterilite's tortious interference claim that Olivet's infringement of the trade dress of Sterilite's cabinets and drawers proximately caused Sterilite to lose the wastebasket business with Walmart. *See* ECF 216, at 3 (verdict); *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007) (outlining the elements of a tortious interference claim). The jury was instructed at trial to "decide whether Sterilite ha[d] shown by a preponderance of the evidence that any wastebasket revenue Sterilite lost directly and proximately resulted from Olivet's improper interference." ECF 226, at 124:15-18. Sterilite's theory, as the Court explained to the jury, was that it was harmed because had Olivet not offered to sell Walmart the infringing cabinets and drawers, Walmart would not have agreed to purchase from Olivet the non-infringing knock-off wastebasket lids. *See id.* at 124:18-22; ECF 219-1, at 33:1-6. In response to a jury question during deliberations, the Court clarified for the jury that "[p]roximate cause may be established by showing that a result would not have occurred but for Olivet's conduct, and that the result was the natural and probable consequence of that conduct." ECF 228, at 21:9-12. The jury ultimately awarded Sterilite $5.2 million in damages on its tortious interference claim. ECF 216, at 3.

Olivet principally argues that the only "direct" evidence in the record—emails from May and June 2021—establishes that it was awarded the wastebasket business because it met Walmart's cost and packaging requirements, not because of its infringement of Sterilite's trade dress in the cabinets and drawers. ECF 310, at 11; *see* ECF 310-3, at 80-95 (Trial Ex. 117). Sterilite contends, as a threshold matter, that Olivet forfeited this proximate causation argument by not raising it in the Rule 50(a) motion. "A Rule 50(b) motion cannot be used to introduce a legal theory not *distinctly* articulated in the Rule 50(a) motion." *Santos-Arrieta v. Hosp. Del Maestro*, 14 F.4th 1, 8 (1st Cir. 2021) (quotation marks omitted). The scope of a Rule 50(b) motion is therefore limited to the "'grounds specified at the time, and no others.'" *Menninger v. PPD Dev., L.P.*, 145 F.4th 126, 133 (1st Cir. 2025) (quoting *Zachar v. Lee*, 363 F.3d 70, 73 (1st Cir. 2004)). In Sterilite's telling, Olivet's Rule 50(a) motion argued solely that "[t]he only evidence related to what caused the loss of Sterilite's wastebaskets revenue [was] testimony that Sterilite failed to keep up with Walmart's demand." ECF 202, at 3. Olivet disagrees, contending that its Rule 50(a) motion argued more broadly that "[n]o evidence exist[ed] to support Sterilite's theory that the alleged cabinet/drawer infringement caused loss of wastebasket sales." *Id.* So, Olivet contends, its Rule 50(b) motion can properly invoke other evidence in the record, even if that evidence was not cited in its Rule 50(a) motion or highlighted at trial. *See González-Bermúdez v. Abbott Lab'ys P.R. Inc.*, 990 F.3d 37, 45 (1st Cir. 2021) (no waiver where Rule 50(a) motion "specifically asserted that there was no evidence to support the age discrimination claim" because the "caselaw does not as a general matter require more specificity").

The Court need not reach this issue because it can assume, favorably to Olivet, that there has been no waiver. Even so, Olivet's motion must be denied because a reasonable jury could find, based on the evidence admitted at trial, that its infringement of Sterilite's trade dress in the cabinets

and drawers more likely than not caused Sterilite to lose the wastebasket lid revenue from Walmart. Olivet and Walmart discussed selling replicas of Sterilite's wastebaskets in August and September 2020, but Walmart did not agree to purchase them at that time. ECF 222, at 131:25-132:8, 137:6-14; ECF 310-3, at 8-19 (Trial Ex. 88). After discussions with Olivet in November 2020, Walmart committed to purchasing Olivet's copies of Sterilite's cabinets and drawers in January 2021 and approved their designs in mid-April 2021 "to replace" Sterilite's products. ECF 222, at 115:3-116:17, 120:6-18, 162:18-163:16; ECF 310-3, at 1-7 (Trial Ex. 57), 96-100 (Trial Ex. 128), and 134-41 (Trial Ex. 138). In early May 2021, within weeks of the approval of those cabinet and drawer designs, Walmart reached out to Olivet about supplying wastebaskets. ECF 310-3, at 80-95 (Trial Ex. 117). The next month, the molds arrived in the United States for Olivet's cabinets and drawers, and Walmart committed to purchasing Olivet's wastebaskets. *Id.* at 62-75 (Trial Ex. 109); ECF 222, at 125:13-19, 164:11-165:11. Olivet began producing its cabinets and drawers in July 2021 and shipping those products to Walmart in September 2021. ECF 222, at 125:21-126:5; Trial Ex. 69. Walmart then approved its first purchase of Olivet's wastebaskets on September 27, 2021. ECF 222, at 22:25-23:1, 23:18-24:6; Trial Ex. 131.

Olivet's Chief Growth Officer, Megan Overbey, testified that the wastebasket business it earned was "an example of" Olivet having to "prove [it]self" before it could "get more opportunities" at Walmart. ECF 220, at 105:11-106:1. From this testimony, together with the timeline for Olivet's sales of cabinets and drawers, and then wastebasket lids, to Walmart, a reasonable jury could find that Olivet's successful copying of Sterilite's cabinets and drawers provided Walmart such proof. Viewed in the light most favorable to the verdict, the trial evidence supported Sterilite's theory, and thus permitted the jury to reasonably infer, that Olivet won the wastebasket business from Walmart because it demonstrated that it could successfully produce

copies of Sterilite's cabinets and drawers. This conclusion did not rest on pure speculation or conjecture, as Olivet argues; rather, it was adequately supported by evidence the jury could have credited. *See MacQuarrie v. Howard Johnson Co.*, 877 F.2d 126, 131 (1st Cir. 1989) (affirming denial of a directed verdict where the jury could "infer proximate cause" from the evidence, viewed "in the light most favorable to" the verdict); *Commonwealth v. Angelo Todesca Corp.*, 446 Mass. 128, 141 (2006) ("Subject to those comparatively rare situations when a court is able to draw the outer limits, questions of proximate cause are in the province of the jury." (quotation marks omitted)); *Adcom Prods., Inc. v. Konica Bus. Machines USA, Inc.*, 41 Mass. App. Ct. 101, 106 (1996) (affirming denial of motion for judgment notwithstanding the verdict on tortious interference claim where circumstantial evidence supported the jury's finding in favor of the plaintiff on proximate cause).

Notwithstanding such evidence, Olivet maintains that no reasonable jury could have found proximate causation. That is so, Olivet contends, because emails from May and June 2021 indicate that it won the wastebasket business by agreeing to Walmart's cost and packaging terms, an agreement Sterilite was unable to make. *See* ECF 310-3, at 80-95 (Trial Ex. 117). For example, Overbey's email from May 7, 2021 states that "Sterilite [was] still in the running" for the wastebasket business, but it was "not being accommodating (on [Walmart's] casepack) needs so [Walmart was] looking to [Olivet] as a possible solution." *Id.* at 93. Her June 4, 2021 email says that Walmart "commit[ted]" to buying Olivet's knock-off wastebaskets after Olivet satisfied Walmart's pricing and packaging needs. ECF 310-3, at 70-72 (Trial Ex. 109). From Olivet's vantage point, these emails show that "there were other causes" besides its infringement of Sterilite's trade dress in the cabinets and drawers that may have led Sterilite to lose the wastebasket business. *Pinto v. M/S Fernwood*, 507 F.2d 1327, 1332 (1st Cir. 1974).

The First Circuit has repeatedly observed, however, that "questions of proximate cause are generally best left to the jury." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 23 (1st Cir. 2005); *see Putnam Res. v. Pateman*, 958 F.2d 448, 460 (1st Cir. 1992) (collecting cases). Olivet had the opportunity to, and did, challenge Sterilite's theory of proximate causation at trial. *See, e.g.*, ECF 226, at 28:6-31:1. The jury heard Olivet's arguments and, as it was permitted to do, rejected them. *See Wortley v. Camplin*, 333 F.3d 284, 296 (1st Cir. 2003) (affirming denial of Rule 50(b) where jury "had an adequate basis to" reject defendant's proximate causation argument); *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 27-28 (1st Cir. 1998) (same where plaintiff produced sufficient evidence of causation). It cannot be said that "the jury failed to reach the *only* result permitted by the evidence." *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020) (quotation marks omitted). As the Court previously held in denying Olivet's Rule 50(a) motion, there was "enough evidence" on the tortious interference claim for "a reasonable jury" to "find in Sterilite's favor" that "had Olivet not produced the drawers and the cabinets that were copies of Sterilite's products, . . . Walmart would not have then purchased the wastebaskets." ECF 222, at 100:6-21; *see* ECF 225, at 113:5-14 (denying Sterilite's Rule 50(a) motion on that claim because there was "evidence on both sides about causation, and . . . a reasonable jury would not have to conclude that infringement of the trade dress caused the breaking of the relationship"). Olivet's Rule 50(b) motion is, accordingly, denied.

## II.    Sterilite's Motion for Attorney's Fees.

Sterilite moves for attorney's fees under the Lanham Act. That statute permits courts to "award reasonable attorney fees to the prevailing party" only "in exceptional cases." 15 U.S.C. § 1117(a). The parties agree that, in this context, "[a]n 'exceptional' case . . . 'is simply one that stands out from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)); *see Scholz v. Goudreau*, 901 F.3d 37, 50 (1st Cir. 2018).[1] Courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554. Factors to consider include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Considering the totality of circumstances, this case is not exceptional. While the jury ultimately found that Olivet willfully infringed Sterilite's trade dress and engaged in common law unfair competition as to the cabinets and drawers, and that Olivet tortiously interfered with Sterilite's business relationship with Walmart, Olivet's litigation position was not objectively unreasonable.[2] Since Olivet had valid arguments and evidence to support its position that Sterilite's trade dress was not protected because it is functional or had not acquired secondary meaning, Olivet "might reasonably think [it] did not infringe." *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 81 (1st Cir. 2008) (quotation marks omitted). Indeed, at trial, the Court denied Sterilite's Rule 50(a) motion on the grounds that "a reasonable jury could conclude, based on the evidence that

---

[1] While *Highmark* and *Octane* both addressed the Patent Act, 35 U.S.C. § 285, that statute "contains nearly identical language" to the Lanham Act, 15 U.S.C. § 1117(a), in allowing the prevailing party to receive attorney's fees in "exceptional" cases. *Scholz*, 901 F.3d at 49.

[2] At summary judgment, the Court entered judgment for Olivet on Sterilite's claims for trade dress infringement under the Lanham Act, dilution pursuant to M.G.L. c. 110H, § 13, and common law unfair competition with respect to Sterilite's 11-gallon and 13-gallon wastebasket lids. ECF 137. Sterilite is not seeking fees with respect to those claims for which, unlike the claims at trial, it was not the prevailing party. ECF 308, at 3 n.1.

ha[d] come in, that the trade dress is functional" and that there was evidence "on both sides" regarding secondary meaning, willfulness, and, with respect to the tortious interference claim, causation. ECF 225, at 111:14-113:14; *see Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1381 (Fed. Cir. 2020) (reversing Section 1117(a) attorney's fees award in part because "'a party is entitled to rely on a court's denial of summary judgment and [judgment as a matter of law] . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial'" (quoting *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)).

Sterilite's counterarguments are unpersuasive. Although the jury found that Olivet willfully infringed the trade dress of Sterilite's cabinets and drawers, "[t]here is no 'per se equivalence between [an] exceptional case and a jury finding of willfulness.'" *Visible Sys.*, 551 F.3d at 81 (quoting *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 31 n.5 (1st Cir. 2002)). Nor does Olivet's failure to investigate Sterilite's intellectual property make this action exceptional. Olivet's corporate secretary, Peter Lin, testified at trial, through his deposition, that Olivet "did not consider trade dress" in searching for patents or intellectual property held by Sterilite. ECF 221, at 174:7-25, 178:2-8. But the "mere failure to conduct a trade [dress] search before using [such trade dress] may evidence nothing more than carelessness, and so may not warrant an award of fees." *Tamko Roofing Prods.*, 282 F.3d at 33-34. And it is undisputed that Sterilite's trade dress was not registered on the principal register. *See* 15 U.S.C. § 1125(a)(3); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 821 (1st Cir. 1987) (reversing exceptional case finding because, when the defendants chose their trade name "The Bettle Barn," the plaintiff "had neither registered the word Beetle nor the design mark Beetle" and "[t]hey were therefore not put on statutory constructive notice of [the plaintiff's] claim of ownership of those marks").

Sterilite also points to Olivet's contradictory testimony between discovery and trial on the issue of copying. After initially disavowing copying during discovery, Overbey and Olivet's Chief Executive Officer, Terry Muldoon, admitted at trial that Olivet intentionally copied the design of Sterilite's cabinets and drawers to produce its own versions. ECF 223, at 23:1-16, 35:7-10; ECF 225, at 72:15-73:2. Intentional copying, however, is just one factor, among many, that provides circumstantial evidence probative of secondary meaning. *See Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 43 (1st Cir. 2001) (listing other factors, including "the nature and extent of advertising and promotion of the trade dress" and evidence of actual customer confusion). Even if Olivet had conceded this factor earlier in the litigation, Sterilite would have still needed to address the remaining factors and Olivet's consumer surveys in order to establish secondary meaning. *See Ji v. Bose Corp.*, 626 F.3d 116, 129 (1st Cir. 2010) (affirming denial of "attorneys' fees under § 1117(a)" where plaintiff's "claim was not entirely unfounded" because she established "two of the factors used to assess the likelihood of consumer confusion under the Lanham Act"), *abrogated on other grounds by Dupree v. Younger*, 598 U.S. 729 (2023).

Sterilite further takes issue with Olivet's motion practice and conduct during discovery. Sterilite is correct that Olivet repeatedly argued, and the Court routinely rejected as contrary to First Circuit precedent, that trade dress is functional if its individual elements are functional. *See, e.g.*, ECF 22; ECF 137, at 27; ECF 176, at 3; *see also I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 37 (1st Cir. 1998) ("[A] particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." (quotation marks omitted)). While that argument lacked merit, Olivet had other viable arguments on functionality, which led the Court at summary judgment to hold that "triable disputes of material fact exist as to the utilitarian functionality of Sterilite's asserted trade dress." ECF 137, at 30; *see Munchkin*, 960

F.3d at 1381 (not "exceptional" where court denied summary judgment). This argument, standing alone, does not render Olivet's overall litigation position unreasonable. Nor does Olivet's behavior in discovery. It is true that Sterilite filed three motions to compel discovery that were wholly or partially granted. ECF 27, 30, 42, 47, 148, 152. But Olivet's untimely production of documents does not stand out from other cases or reflect an improper "ulterior purpose" or "oppressive" behavior on Olivet's part. *Ji*, 626 F.3d at 129 (plaintiff's "motion practice concerning her routine discovery requests . . . fail[ed] to satisfy the Lanham Act's exceptionality criterion"); *see LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 970 (7th Cir. 2021) (affirming denial of fees under Section 1117(a) because plaintiff's actions during discovery "were certainly bad" but not "so egregious and reprehensible to make the case stand out from others and merit fee-shifting" (quotation marks omitted)).

Finally, Sterilite contends that fees are warranted to deter what it sees as Olivet's business model of copying competitor products. The permanent injunction entered in this case already prohibits Olivet from infringing the trade dress of Sterilite's cabinets and drawers. ECF 291. And Olivet has certified to its compliance with that injunction. ECF 295. No more is needed to deter Olivet from future infringement. *See Scholz*, 901 F.3d at 50 (rejecting "deterrence" rationale for fees because "a judgment on the merits at summary judgment itself preclude[d] future litigation on the same set of facts"); *cf. Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming denial of profits under Section 1117(a) because the permanent injunction would provide "an effective deterrent to future infringement"). Accordingly, Sterilite is not entitled to attorney's fees under the Lanham Act because this case is not exceptional.

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, Sterilite's motion for attorney's fees, ECF 307, and Olivet's

renewed motion for judgment as a matter of law, ECF 309, are DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: July 16, 2026                    UNITED STATES DISTRICT JUDGE

11